# United States Court of Federal Claims

No. 98-419 L
February 5, 2014

———————————————————

**RESOURCE INVESTMENTS, INC.
and LAND RECOVERY, INC.,**

   *Plaintiffs*,

v.

**THE UNITED STATES OF AMERICA,**

   *Defendant.*

Fifth Amendment Takings;
28 U.S.C. § 1500; RCFC
12(b)(1), Subject Matter
Jurisdiction

———————————————————

*Daniel D. Syrdal*, Orrick, Herrington & Sutcliffe, LLP, Seattle, WA, for plaintiffs.

*Frank J. Singer*, Environment & Natural Resources Division, Natural Resources Section, United States Department of Justice, Washington, DC, for defendant.

## OPINION *and* ORDER

**Block,** *Judge*.

  Before the court is defendant's motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") and 28 U.S.C. § 1500. This motion is among a myriad[1] brought by defendant based on *United States v. Tohono O'Odham Nation*, 131 S. Ct. 1723, 1731 (2011) , which clarified the limitations of this court's jurisdiction contained in 28 U.S.C. § 1500. Although the Tucker Act confers jurisdiction upon this court to hear certain types of monetary claims against the United States, § 1500 curtails that jurisdictional grant by prohibiting the court from entertaining "any claim for or in respect to which" the plaintiff "has pending in any other court any suit or process against the United States . . . ."

———————————————————

[1] For instance, the Court of Federal Claims issued only 8 published § 1500 opinions in 2008, only 5 in 2009, and only 6 in 2010. In contrast, between June and December 2011—*i.e.*, the months following the publication of *Tohono O'Odham* in April 2011—the Court of Federal claims issued 18 published § 1500 opinions. *See also Klamath Irrigation Dist. v. United States*, 1-5910L, 2013 WL 6139925 (Fed. Cl. Nov. 22, 2013), at *1 ("[I]n recent years, [§ 1500] has experienced a *risorgimeneto*, triggered by the Supreme Court's decision in . . . *Tohono O'Odham*").

Although the purpose of § 1500 is to protect the United States against double recovery, this law has created a tremendous burden on plaintiffs because Congress frequently requires certain claims against the United States to be heard in one particular court.[2]  Since § 1500 prohibits plaintiffs from contemporaneously suing under different theories of relief that are based on the same or similar operative facts, § 1500 frequently compels plaintiffs with multiple claims "to pursue only one claim and abandon the others."  *See* Administrative Conference Recommendation 2012-6, *Reform of 28 U.S.C. Section 1500*, http://www.acus.gov/recommendation/reform-28-usc-section-1500, at 1 (recommending that § 1500 be reformed or repealed altogether).  Section 1500 has been described as a "trap for the unwary"[3] that calls to mind the old formal rules of pleading.[4]

The facts of this case date back to the mid-1980s, when Pierce County, Washington, sought to address an acute shortage of landfill space by contracting with plaintiffs to locate and develop a new waste disposal site.  Plaintiffs purchased a 320-acre site in 1987 after conducting extensive research, and eventually succeeded in securing a host of permits, including twelve state

---

[2] Congress imposes these jurisdictional limits to safeguard its sovereign immunity and to promote uniformity.  *See, e.g.*, Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1079 (Fed. Cir. 2001) (observing that Congress limited jurisdiction over "procurement protest jurisdiction to the Court of Federal Claims" in order to "prevent forum shopping and to promote uniformity in government procurement award law").  *See also* Gregory C. Sisk, *The Jurisdiction of the Court of Federal Claims and Forum Shopping in Money Claims Against the Federal Government*, 88 IND. WASH. L. J. 83 (2013).

[3] Klamath Irrigation Dist. v. United States, 01-591L, 2013 WL 6139925 (Fed. Cl. Nov. 22, 2013), at *1; *Low v. United States*, 90 Fed. Cl. 447, 455 (2009).  A prospective plaintiff with multiple claims must be careful to file suit in the correct order.  For instance, this court has ruled on several occasions that the plain language of § 1500 does allow plaintiffs to escape its strictures by filing their Court of Federal Claims suit prior to filing their district court suit.  *See, e.g.*, Otoe-Missouria Tribe of Indians, Okla. v. United States, 105 Fed. Cl. 136, 139 (2012) ("The plain meaning of pending in court is that there is some action going on in the court.  All of the dictionary references refer to something ongoing . . .").  *See also* United Keetoowah Band of Cherokee Indians in Oklahoma v. United States, 104 Fed. Cl. 180, 185 (2012); Nez Perce Tribe v. United States, 101 Fed. Cl. 139, 142 (2011).  However, this court is divided on the treatment of same day filings.  *See* Passamaquoddy Tribe v. United States, 82 Fed. Cl. 256, 268 (2008) *aff'd*, 426 F. App'x 916 (Fed. Cir. 2011) (holding that "same-day filings in a district court are per se pending for the purposes of § 1500, and the order of filing of the two complaints on the day in question is of no consequence"); *c.f. United Keetowah Band*, 86 Fed. Cl. at 190 (holding that the order of filing *does* apply to same-day filings).

[4] Since prospective plaintiffs may not sue in multiple courts on the basis of the same operative facts, they must first identify "whether the government's conduct is best characterized as a tort, a breach of contract, a taking, a violation of statute, or some combination of these.  No single court has jurisdiction over all these kinds of claims against the government, so the plaintiff cannot combine the claims into a single lawsuit."  Emily S. Bremer & Jonathan R. Siegel, *Clearing the Path to Justice: The Need to Reform 28 U.S.C. § 1500*, 65 ALA. L. REV. 1, 5 (2013).  If the plaintiff errs, the plaintiff must request that the case be transferred and hope that the applicable statute of limitations has not run.

and local permits and four quasi federal-state permits.  Pls.' Dist. Ct. Compl. at 1.  However, after considering the matter for nearly seven years, the U.S. Army Corps of Engineers denied their application on September 30, 1996.  *Id.* at 5.  Protracted litigation ensued.

Litigation over plaintiffs' takings claim has been ongoing in this court since May 4, 1998, when plaintiffs filed their original complaint.  Four other judges on this court have presided over this case.  The parties have spent significant time and resources on this matter, and this court has issued numerous opinions, including opinions concerning the parties' discovery requests and denying the parties' cross-motions for summary judgment.  However, in April 2011, the course of this litigation took a sudden turn.  "[A]lter[ing] decades of Court of Claims and Federal Circuit jurisprudence,"[5] the Supreme Court clarified the scope of § 1500 by holding that the provision precludes jurisdiction as long as a suit shares "substantially the same operative facts" with the claims in another suit that is pending before another court, *regardless* of whether the suits seek the same relief.  *United States v. Tohono O'Odham Nation*, 131 S. Ct. 1723, 1731 (2011).  The Court held that § 1500 applies even if the various jurisdictional statutes passed by Congress over the years have the cumulative effect of compelling an aggrieved party to seek equitable relief in one court and monetary relief in another court.  *Id*. at 1731.  In so ruling, the Court directly overturned the opinion of the United States Court of Appeals for the Federal Circuit ("Federal Circuit") that § 1500 does not apply unless "the claim pending in another court" also requests "the same relief."  *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1551 (Fed. Cir. 1994).

On June 10, 2011—over thirteen years after plaintiffs filed their original district court complaint—defendant seized upon the Court's ruling in *Tohono O'Odham* by filing, for the first time,[6] a motion to dismiss on the ground that § 1500 deprives this court of subject matter jurisdiction.  Defendant alleges that plaintiffs' Court of Federal Claims and district court complaints are based on the same operative facts and that § 1500 accordingly precludes the court from hearing this case, notwithstanding the fact that plaintiffs cannot possibly obtain complete relief in any one court.

For the reasons set forth below, the court agrees that § 1500 applies.  Despite the anachronistic nature of the statute and the harsh outcome for plaintiffs, because of § 1500 the court has no choice but to GRANT defendant's motion to dismiss.

---

[5] Daniel P. Graham *et al.*, *Federal Circuit Year-in-Review 2011: Certainty and Uncertainty in Federal Government Contracts Law*, 41 PUB. CONT. L.J. 473, 485 (2012).

[6] Under the rule created by *Loveladies Harbor*, § 1500 clearly did not apply because both of plaintiffs' complaints sought different remedies: the district court complaint asked the court to find that the Corps had no jurisdiction over their case, whereas the complaint before this court sought monetary compensation.

# I. BACKGROUND[7]

Plaintiffs Resource Investments, Inc. and Land Recovery, Inc.[8] are in the lucrative but heavily regulated business of municipal solid waste management. In 1987, plaintiffs purchased a 320-acre site in Pierce County, Washington, for the purpose of constructing a 168-acre solid waste landfill. Pls.' Dist. Ct. Compl. at 1; Def's Mot. Dismiss at 24, ECF No. 234.[9] Plaintiffs applied for the necessary permits in 1990, including one permit they did not actually need from the U.S. Army Corps of Engineers ("Corps") under § 404 ("section 404 permit") of the Clean Water Act ("CWA"), 33 U.S.C. § 1344, to fill approximately 33.3 acres of wetlands on the site. Pls.' Dist. Ct. Compl. at 1; *see Res. Investments, Inc. v. United States*, 85 Fed. Cl. 447, 460–63 (2009) (discussing plaintiffs' dispute with the Corps). In 1993, three years after plaintiffs applied for their section 404 permit, the Corps decided that plaintiffs must consider "long hauling . . . solid waste to out-of-county disposal sites as an 'action' alternative to the [landfill] project, despite the fact that such alternative was not available to [plaintiffs] and was not legally permissible due to binding provisions of the Tacoma-Pierce County Solid Waste Management Plan." Pls.' Dist. Ct. Compl. at 5. After several years of administrative wrangling, the Corps ultimately denied plaintiffs' permit application on September 30, 1996. *Id.*

Undeterred, plaintiffs filed a complaint one month later in the United States District Court for the Western District of Washington seeking to set aside the Corps' decision under the Administrative Procedure Act ("APA"). Def's Mot. Dismiss at 3. Plaintiffs had no choice but to file in federal district court because the Court of Federal Claims ("CFC") lacks the equitable power to grant such injunctive relief. *See* 28 U.S.C. § 1491(a)(2) (limiting the equitable power of the court to granting relief that is "an incident of and collateral to" a judgment for money damages); *Bowen v. Massachusetts*, 48 U.S. 879, 905 (1988) (holding that "[t]he Claims Court does not have the general equitable powers of a district court to grant prospective relief"). The basis for the district court suit was that the Corps' jurisdiction was preempted by the Resource Conservation and Recovery Act of 1976 ("RCRA"), Pub. L. No. 94-580, 90 Stat. 2795 (codified in sections of 42 U.S.C. §§ 6901–81). Pls.' Dist. Ct. Compl. at 103. In the alternative, plaintiffs requested a declaration that the Corps had violated the CWA and the APA by "unlawfully, arbitrarily and capriciously" concluding that the project would create unacceptable environmental effects. *Id.* at 102.

In their jointly-filed district court complaint, plaintiffs alleged that they had carefully selected the 320-acre site for purchase due to its "uniquely desirable geologic and hydrologic

---

[7] The court has extensively discussed this matter's background in an earlier opinion. *Res. Investments, Inc. v. United States*, 85 Fed. Cl. 447, 455–66 (2009). The background set forth here includes only those facts most pertinent to adjudicating this motion.

[8] Plaintiffs in this case are two corporate affiliates in the business of managing municipal solid waste disposal. Since the ownership of both companies is nearly identical, the court hereafter will refer to the two companies collectively as "plaintiffs," for the sake of convenience. *See* Res. Investments, Inc. v. United States, 85 Fed. Cl. 447, 456 (2009).

[9] Page 1 of Plaintiff's District Court Complaint corresponds to Page 24 of Defendant's Motion to Dismiss. It is available on ECF as Document Number 234. Any allegations made in plaintiff's district court complaint are cited as "Pls.' Dist. Ct. Compl." Any allegations mentioned in plaintiff's CFC complaints are cited as "Pls.' CFC Compl." or "Pls.' Am. CFC Compl."

features," which could provide "superior natural protection to any underlying aquifers," and because there were "no other suitable sites in Pierce County." *Id*. at 2-4. The landfill was also subjected to intense public and regulatory scrutiny. *See id.* at 4. Plaintiffs argued that under these facts, "the Corps'[s] decision denying [plaintiffs'] permit application, if allowed to stand, would destroy [plaintiffs'] reasonable business expectancy from the project." *Id*. at 6. On September 16, 1997, the district court ruled in favor of the Corps. Def's Ex. 2 at 19, ECF No. 234-1. Plaintiffs filed a Notice of Appeal to the United States Court of Appeals for the Ninth Circuit on September 25, 1997. *See* Def's Mot. Dismiss at 3.

While its appeal was pending in the Ninth Circuit, plaintiffs filed a complaint in this court on May 4, 1998, seeking monetary relief pursuant to the Takings Clause of the Fifth Amendment. *Id.* Such relief is available only in this court because the Tucker Act grants this court exclusive jurisdiction over suits seeking compensation for takings unless the relief demanded by plaintiff is $10,000 or less. *See* 28 U.S.C. § 1391(a)(1); *c.f.* 28 U.S.C. § 1346(a)(2). The facts alleged in plaintiffs' CFC complaint are strikingly similar to those alleged in its district court complaint. *See* Def's Mot. Dismiss Appx. A at 1–6, ECF No. 234. Both complaints allege that Pierce County's landfill was nearing capacity; both complaints allege that plaintiffs sought to solve Pierce County's garbage disposal needs by developing a new landfill; both complaints allege that plaintiffs invested substantial financial resources in their search for a landfill site; both complaints allege that plaintiffs applied for a number of permits, including the section 404 permit, to operate its proposed landfill within the complex regulatory scheme set up by federal, state, and local laws; both complaints allege that after extensive public hearings, plaintiffs obtained the necessary state and local permits by 1995; both complaints allege that the Corps was slow in processing their section 404 permit application; and both complaints allege that the Corps denied plaintiffs their section 404 permit, thus giving rise to their suit to set aside the Corps' decision under the APA in district court and their suit for monetary relief under the Takings Clause here in the Court of Federal Claims. *See id.*

Three months after plaintiffs filed their CFC complaint, the Ninth Circuit reversed the district court's dismissal of plaintiffs' permit challenge. *Res. Investments, Inc. v. U.S. Army Corps of Engineers*, 151 F.3d 1162, 1168 (9th Cir. 1998) (holding that plaintiffs did not need a section 404 permit because the CWA did not confer jurisdiction over plaintiffs' landfill project to the Corps). Plaintiffs then amended their complaint to reflect the Ninth Circuit's holding that the Corps' assertion of jurisdiction was "erroneous." Pls.' Am. CFC Compl. at 1; *Resource*, 151 F.3d at 1169. Extensive litigation followed. *See generally Resource*, 97 Fed. Cl. 545 (2011) (granting in part plaintiffs' motion to require the Corps to pay an expert witness more than that required by statute); 93 Fed. Cl. 373 (2010) (ruling on discovery motions); 85 Fed. Cl. 447 (2009) (denying cross-motions for summary judgment). As of today, this lawsuit's life spans nearly 17 years.

Like this litigation, section 1500 is far from new. The statute's predecessor was enacted in 1868 "to curb duplicate lawsuits brought by residents of the Confederacy following the Civil War." *Tohono O'Odham*, 131 S. Ct. at 1728. At that time, the common practice was for so-called "cotton claimants" to sue the United States in the Court of Claims under the Abandoned Property Collection Act, ch. 120, 12 Stat. 820 (1863), and simultaneously seek relief against federal officials in other courts based on the same set of facts. *Id.* The only difference between the suits was that one would assert a contract theory in the Court of Claims, while the other would assert a tort theory in district court. And although the statute's roots are quite old,

"Congress reenacted it even as changes in the structure of the courts made suits on the same facts more likely to arise." *Tohono O'Odham*, 131 S. Ct. at 1729.

Under prior precedent, two claims were considered "for or in respect to" each other only if there was some overlap in the relief requested *and* they arose from the same operative facts. *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1551 (Fed. Cir. 1994) ("For the Court of Federal Claims to be precluded from hearing a claim under § 1500, the claim pending in another court must arise from *the same operative facts*, and must seek *the same relief*."). But in April 2011, the Supreme Court decided *United States v. Tohono O'Odham Nation*, 131 S. Ct. 1723, which held that two claims are "for or in respect to the same claim, precluding jurisdiction in the CFC, if they are based on substantially the same operative facts, regardless of the relief sought in each suit." *Id.* at 1731.

With section 1500's application clarified in *Tohono O'Odham*, defendant filed the instant motion to dismiss, arguing (1) that the Corps' denial of a section 404 permit constitutes the critical operative fact connecting plaintiffs' two suits and (2) that the district court action was pending when its CFC suit was filed. Def's Mot. Dismiss at 2.

## II. DISCUSSION

### A. Applicable Legal Standard

Plaintiffs have the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed.Cir.1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)). "In determining jurisdiction, a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (2011) (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)).

### B. Subject Matter Jurisdiction

The authority of lower federal courts to hear cases is defined by Congress. *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993). *See* U.S. Const. Art. III, § 1, cl. 1. ("The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish") (granting Congress the power to create—and thus define the jurisdiction of—lower courts). The Tucker Act provides that the Court of Federal Claims "shall have jurisdiction to render any judgment upon any claim against the United States founded . . . upon the Constitution . . . [for] damages . . . not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is itself only a jurisdictional statute; it "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). The Tucker Act confers jurisdiction only if a plaintiff can "identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc). Claims seeking relief under the Takings Clause of the Fifth Amendment fall under this jurisdictional grant because they are founded upon the Constitution. *See Williams v. United States*, No. 10-880, 2011 WL 3891124, at *2 (Fed. Cl. Sept. 2, 2011) (noting that the Tucker Act's jurisdictional grant includes claims for just compensation under the Fifth Amendment); *see also*

U.S. Const. amend. V, cl. 4 ("[N]or shall private property be taken for public use, without just compensation.").

At first blush, it would appear that jurisdiction over the instant takings case is proper under 28 U.S.C. § 1491.  However, as noted several times above, the jurisdictional grant created by the Tucker Act is limited by 28 U.S.C. § 1500, which provides as follows:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

Applying this rule "is more straightforward than its complex wording suggests." *Tohono O'Odham*, 131 S. Ct. at 1727.  This "straightforward" application contemplates a two-pronged inquiry: (1) whether the "claim" filed in the CFC was "for or in respect to" a claim (2) "pending against the United States or its agents" in another court when the CFC's jurisdiction was invoked.  "Whether another claim is 'pending' for purposes of section 1500 is determined 'at the time at which the suit in the Court of Federal Claims is filed, not the time at which the Government moves to dismiss the action.'"  *Low v. United States*, No. 10-811C, 2011 WL 2160880, at *5 (Fed. Cl. June 1, 2011) (quoting *Loveladies Harbor*, 27 F.3d at 1548).  Claims are "for or in respect to the same claim when they are 'based on substantially the same operative facts.'"  *Tohono O'Odham*, 131 S. Ct. at 1727 (quoting *Keene Corp.*, 508 U.S. at 212).  *See also Trusted Integration*, 659 F.3d at 1165-70 (applying the statute to two of the three claims at issue, and holding that those two claims arose out of identical conduct as that alleged in a pending district court suit); *Central Pines Land Co. v. United States*, 99 Fed. Cl. 394, 399–401 (2011) (holding that a suit seeking a declaration of mineral rights in district court and a suit brought under the Takings Clause arise from the same operative facts because they arise from the same government conduct), *aff'd*, 697 F.3d 1360 (Fed. Cir. 2012); *Yankton Sioux Tribe*, 84 Fed. Cl. 225, 231–33 (2008) (holding that two suits that allege breaches of duty arising from the same trust relationship and involving the same trust property share the same operative facts).

**C. Plaintiffs' Complaints Share the Same Operative Facts**

  *1. An "operative fact" is a fact that is material to proving a claim.*

The court must now consider whether the CFC complaint alleges substantially the same operative facts as the suit bought before the federal district court.  Before proceeding further, the court must consider what an "operative fact" is.

The definition of an "operative fact" is an issue of controversy among the parties.  According to plaintiffs, operative facts are limited to "those facts that are material in determining the claims at issue."  Pls.' Resp. at 2.  Defendant, in contrast, insists that the sweeping language in *Johns-Manville* stands for the proposition that the court should compare the facts of the two complaints without any reference whatsoever to the legal theories advanced.  Def.'s Reply in Support of Mot. Dismiss at 6-7.  *See Johns-Manville Corp. v. United States*, 855 F.2d 1556, 1564 (Fed. Cir. 1988) ("the term 'claim' in section 1500 'has *no reference* to the legal theory upon which a claimant seeks to enforce his demand.'  Since the legal theory is *not relevant*, neither are

the elements of proof necessary to present a prima facie case under that theory) (emphasis added); *Brandt v. United States*, 710 F.3d 1369, 1374 (Fed. Cir. 2013) ("the legal theories underlying the asserted claims are *irrelevant* to this inquiry") (emphasis added).  In *Johns-Manville*, the Federal Circuit found that § 1500 precluded the Court of Federal Claims from hearing plaintiff's contract claim, despite the fact that the elements of proof for the plaintiff's tort action in district court were different from the elements in the contract theory advanced in the CFC.

However, defendant takes the language of *Johns-Manville* too far.  In that case, the Federal Circuit simply held that the word "claim" in § 1500 "has no reference to the legal theory *upon which claimant seeks to enforce his demand*." 855 F.2d at 1564 (emphasis added).  Thus, in *Johns-Manville*, the Federal Circuit never went as far as to state that the legal claims advanced by plaintiff are wholly irrelevant in the §1500 context, but simply held that the *type of relief sought* is irrelevant.  This view is consistent with the Supreme Court's position that a § 1500 analysis should take into account the principles of res judicata.  *See Tohono O'Odham*, 131 at 1730 (emphasizing that the "principles of preclusion law [are] embodied in the statute [§ 1500]"); *Klamath Irrigation Dist. v. United States*, 01-591L, 2013 WL 6139925 (Fed. Cl. Nov. 22, 2013), at *14-17 (stating that the meaning of "operative fact" in the context of § 1500 should be interpreted with reference to the Court's civil procedure and res judicata opinions). Moreover, it is consistent with the Supreme Court's holding that "the form of relief" does not matter "*except insofar as it affects what facts parties must prove.*" *Tohono O'Odham*, 131. at 1730 (emphasis added).  In fact, the very use of the word "operative" suggests that the relationship between the facts and the legal theory argued by the plaintiff must necessarily be relevant.  *See* BLACK'S LAW DICTIONARY 670 (9th ed. 2009) (defining an "operative fact" as "1. A fact that *affects* an existing legal relation, especially *a legal claim*," and "2. A fact that constitutes the transaction or event *on which a claim or defense is based*") (emphasis added).

In sum, two claims arise from substantially the same operative facts if the facts material to supporting a claim in one complaint are also necessary to support a claim in another complaint.  In order to make that determination, the court must necessarily take into consideration the nature of the legal arguments made in each complaint.

2. *Plaintiffs' district court and CFC complaints share substantially the same operative facts.*

Having considered what an operative fact is, the court must now consider whether plaintiffs' CFC and district court complaints share substantially the same operative facts.  As explained above, although the court is barred from taking into account the theories of relief requested by the plaintiffs in the two complaints, the claims articulated by the plaintiff are relevant in determining whether a fact is operative.  Hence, "determining whether two claims are 'based on substantially the same operative facts' requires more than a side-by-side comparison of the two complaints to see how much verbiage is in common." *Petro-Hunt*, 105 Fed. Cl. 37, 43 (citing *Trusted Integration*, 659 F.3d at 1165).

  a. *Trusted Integration* requires a claim-by-claim approach to determining whether plaintiffs' claims arise out of substantially the same operative facts.

*Trusted Integration* is an especially instructive opinion because the Federal Circuit addressed the issue of "operative facts" in detail.  Notably, in that case, the facts alleged by the plaintiff in the CFC complaint were nearly the same as those alleged in the district court

- 8 -

complaint.  Plaintiff Trusted Integration, a commercial supplier of information security services, had contracted with the Department of Justice ("DOJ") to help DOJ meet the information security standards imposed by the Federal Information Security Management Act ("FISMA") by providing a product known as "TrustedAgent."  Apparently, DOJ hoped to use this service to win the designation of "Center of Excellence" ("COE") from the Office of Management and Budget ("OMB"), which would allow DOJ to sell FISMA compliance solutions to other agencies.  *Trusted Integration*, 659 F.3d at 1161-62.

Although DOJ represented that it would include Trusted Integration in the submission to the COE Committee, DOJ submitted its own alternative to TrustedAgent, which it developed by accessing and studying—without permission—the TrustedAgent database.  *Id*.  Trusted Integration sued first in federal district court, asserting "(1) a Lanham Act claim for false designation of origin[,] (2) a common law unfair competition claim[,] and (3) a breach of fiduciary duty claim." *Id*.  Trusted Integration then sued in this court, asserting "(1) breach of an oral or implied-in-fact contract[,] (2) breach of the TrustedAgent license agreement[,] and (3) breach of the duty of good faith and fair dealing." *Id*.  The government moved to dismiss all of plaintiffs' CFC claims on the ground that § 1500 precluded this court from exercising jurisdiction.  The Court of Federal Claims granted the motion, and Trusted Integration timely appealed.  *Id*.

In *Trusted Integration*, the Federal Circuit proceeded by identifying which government conduct was material to stating a cause of action for each claim made in the CFC case.  *See id*. at 1165-68.  The court found that § 1500 precluded plaintiffs from asserting that the DOJ had breached an implied-in-fact contract to engage in a joint venture because the conduct essential to that claim—*i.e.*, the DOJ's failure to promote or offer Trusted Integration's network security solution—was also material to the breach of fiduciary duty claim brought by plaintiff before the federal district court.  *Id*. at 1165-66.  Similarly, the court found that § 1500 precluded plaintiffs from arguing that the DOJ had breached the duty of good faith and fair dealing because the conduct essential to that claim—*i.e.*, the DOJ's failure to advise Trusted Integration that it was developing a competing product—was also material to the breach of fiduciary duty claim brought before the district court.  *Id*. at 1166.

In contrast, the Federal Circuit found that § 1500 did *not* preclude plaintiffs from asserting a breach of license agreement claim before the Court of Federal Claims.  Although it acknowledged that the conduct at issue in the breach of license agreement claim—the DOJ's unauthorized *access* of plaintiff's database—was also alleged in the district court case, the Federal Circuit found that it was not material to any claim made by the plaintiff in the district court complaint.  *Id*. at 1167-69.  Applying the "evidence test" endorsed by the *Tohono O'Odham* Court, which determines that two suits involve the same claim if "the same evidence support[s] and establish[es] both the present and the former cause of action," the Federal Circuit found that evidence relating to the breach of license agreement claim supported but did not establish a cause of action in the district court "because it was insufficient to entitle the plaintiff to relief in the prior suit."  *Id*. at 1169; *Tohono O'Odham*, 131 S. Ct. at 1730.  Accordingly, the court held that plaintiff's breach of license agreement claim was not based on substantially the same operative facts as any claim brought before the district court, and concluded that § 1500 did not apply.  *Trusted Integration*, 659 F.3d at 1170.

b. Plaintiffs' CFC claim and counts III and IV of plaintiffs' district court complaint arise out of the same operative facts.

Following the example set by *Trusted Integration*, the court now turns to an examination of the claims and facts alleged by plaintiffs in the two complaints. To do this, the court must first identify which facts are operative, and then examine whether there is a substantial overlap, "on a claim-by-claim basis." *Klamath Irrigation District*, 01-591L, 2013 WL 6139925, at *19; *Trusted Integration*, 659 F.3d at 1165.

In its original CFC complaint, plaintiffs posited only one claim—that the Corps had taken plaintiffs' land without paying just compensation, as required by the Fifth Amendment of the U.S. Constitution. Pls.' CFC Compl. ¶¶ 47-64. Plaintiffs argued that the Corps' denial of the permit did not advance any legitimate governmental interest and interfered with their investment-backed expectations. *Id*. Clearly, the conduct that is material or operative to that takings claim is the *denial of the permit* by the Corps, for had the Corps granted the permit, plaintiffs would have no takings claim. Therefore, applying *Trusted Integration*, § 1500 does not preclude this court from considering plaintiffs' takings claim unless the facts underlying the Corps' denial of the permit were also material to one of the claims brought by plaintiffs before the district court.

In counts I and II of the district court complaint, plaintiffs contended that the Corps' assertion of jurisdiction under § 404 of the CWA was preempted by the Resource Conservation and Recovery Act and by the Corps' own regulations, respectively. Accordingly, the operative conduct at issue in counts I and II of the district court complaint was the Corps' assertion of jurisdiction under § 404. As plaintiffs point out, the Corps' decision to assert jurisdiction is separate from the Corps' denial of the permit (the operative conduct in the CFC claim), for plaintiffs could have, hypothetically, challenged the Corps' assertion of jurisdiction in federal district court before the Corps had decided whether or not to grant the permit. This court accepted a similar distinction in *McDermott, Inc. v. United States*, 30 Fed. Cl. 332 (1994), one of the cases cited by the plaintiffs. Accordingly, the court finds that the facts operative to asserting counts I and II before the district court were different from the operative facts in the CFC case.

However, the jurisdiction by the Corps was not the only issue in the district court case, even if it was the only issue considered on appeal by the Ninth Circuit. In count III of the district court complaint, plaintiffs alleged that the Corps' *denial of the permit* violated the National Environmental Policy Act (NEPA). Specifically, the plaintiffs argued that the Corps violated NEPA by unlawfully denying a permit on environmental grounds without performing an Environmental Impact Statement. Clearly, the facts underlying the denial of the permit are not mere background facts, but are operative or material to the claim made in count III—but for the denial of the permit, plaintiff could not have alleged a NEPA violation. *See* Pls.' Dist. Ct. Compl. ¶¶ 152-170. Accordingly, the court finds that plaintiffs' CFC claim and count III of the district court complaint arise from substantially the same operative facts, and thus implicate § 1500.

Similarly, in count IV of the district court complaint, the operative facts at issue were the facts underlying the Corps' *decision to deny the section 404 permit*. According to plaintiffs, the denial of the permit violated section 404 of the CWA as well as the Corps' own internal regulations by improperly considering long haul waste disposal as a practicable alternative, by considering Horn Creek as a practicable alternative, by improperly disregarding the certification by the Washington State Department of Ecology under § 401 of the CWA, and by failing to elevate the decision on the permit application to a higher level within the Corps. Pls.' Dist. Ct.

Compl. ¶¶ 219-311. Here too, the facts underlying the Corps' *decision to deny the permit* were material to plaintiffs' claim that the Corps violated applicable regulations because the denial of the permit was the culmination of a series of allegedly improper acts taken by the Corps. *C.f.* Pls.' Opp'n at 12 ("Plaintiffs alleged that the Corps violated [§] 404 and the Corps' own internal regulations when it denied Plaintiffs' permit application"). Therefore, the court finds that plaintiffs' taking claim and count IV of plaintiffs' district court complaint arise from substantially the same operative fact, and thus implicate § 1500.

    3. *The cases cited by plaintiffs are consistent with the court's finding that § 1500 applies.*

The case before the court is clearly distinguishable from the precedents cited by plaintiffs because, in those cases, none of the facts that were material to supporting any claim made before the district court were material to supporting the claim made before the CFC. For instance, in *McDermott*, the only issue before the CFC was plaintiff's breach of contract claim. In contrast, the issues before the federal district court were the constitutionality and applicability of 10 U.S.C. § 2405, under which the Navy had sought to limit the ability of shipbuilders to raise contract claims. 30 Fed. Cl. at 334-35. As defendant points out, the plaintiff's district court complaint "required legal determinations that did not implicate the specific contract or conduct at issue" in the action before the Court of Federal Claims. Def's Rep. at 9–10. Unlike *McDermott*, the plaintiffs' district court action challenged not only the jurisdiction of the Corps, but also the conduct of the Corps in denying the permit, which was the operative fact in both the takings claim before the Court of Federal Claims and counts III and IV of the district court complaint.

Plaintiffs' reliance on *d'Abrera* is similarly misplaced. Pls.' Resp. at 21–22 (citing *d'Abrera*, 78 Fed. Cl. at 58). In *d'Abrera*, the court began by observing that "claims involving the same general factual circumstances, but distinct material facts, can fail to trigger Section 1500." *Id*. at 58 (quoting *Branch v. United States*, 29 Fed. Cl. 606, 609 (1993)). The *d'Abrera* court, like the Federal Circuit in *Trusted Integration*, proceeded to identify which *conduct* by the government was material to the claims made in the CFC and the district court cases. *Id*. The court found that § 1500 did not apply because the conduct material to the plaintiff's copyright infringement claim—namely, the unauthorized reproduction and distribution of the plaintiff's photographs—was distinct from the conduct material to the plaintiff's Lantham Act claim—namely, the government's passing off the photographs as its own. Plaintiffs argue that *d'Abrera* stands for the proposition that "there is no jurisdictional bar when transactionally related claims depend upon different operative facts. This statement is accurate but does not apply to plaintiffs' case. As explained above, the facts underlying the Corps' denial of the section 404 permit were operative in both counts III and IV of the district court complaint and in the takings claim brought before the CFC.

Plaintiffs' reliance on *Lucas* is also unavailing. As in *Trusted Integration*, it was irrelevant in *Lucas* that the two suits shared similar background facts because the claims in each court arose out of *separate* breaches of two *separate* contracts. *See Lucas*, 25 Cl. Ct. at 305 ("These are two entirely separate contracts with distinct terms and purposes. The materials before the court indicate that . . . the material facts supporting each claim are largely dissimilar."). Again, and in contrast, the denial of the permit by the Corps is the central operative fact in both the CFC and counts III and IV of the district court complaint.

Lastly, *Whitney Benefits* is wholly inapposite. In that takings case, the CFC had already granted plaintiffs' judgment, the Federal Circuit had already affirmed the judgment of the CFC, and the Supreme Court had already denied cert. *Whitney Benefits, Inc. v. United States*, 31 Fed.

Cl. 116, 117 (1994). In a subsequent dispute over the apportionment of the award of just compensation, the government moved to set aside the judgment as void for lack of subject matter jurisdiction under § 1500. *Id*. The court observed that, although the government had failed to argue the § 1500 issue, both the CFC and the Federal Circuit raised the issue of the CFC's subject matter jurisdiction and found that the CFC had jurisdiction. The court held that regardless of the merits of the government's argument, it was powerless to reopen a case in which there was a final judgment. *Id*. at 119. Although the court did discuss the merits of defendant's § 1500 argument, this discussion was unnecessary to the judgment and thus had no precedential value.

And even to the extent that *Whitney Benefits* applied an operative facts analysis, the case is distinguishable. In that case, the plaintiffs sued in district court to compel the government to accede to a statutory exchange of coal tracts pursuant to the Surface Mining Control and Reclamation Act. That act had deprived plaintiffs' land of value by forbidding strip mining on their land, but mitigated the cost to preexisting owners by allowing them to swap land subject to mining prohibitions for Federal land free of such restraints. *Id*. at 120. The court found that the operative facts in the district court case were "merely the conditions set forth in the statute" that had to be met to qualify for a land swap. *Id*. This set of conditions was not a prerequisite to establishing a takings claim in the suit brought before the CFC. Accordingly, the CFC found that the two suits did not arise from substantially the same operative facts. *Id*. In contrast, the facts underlying the Corps' denial of the section 404 permit were operative in both counts III and IV of the district court complaint and in the takings claim brought before the CFC.

In conclusion, plaintiffs' cited authorities are clearly distinguishable from the case before the court. In contrast to the cases cited by plaintiffs, the operative facts in the case before us— namely, the facts underlying the Corps' decision to deny the permit—were also material in the district court suit.

**D. Plaintiffs' District Court Suit Was "Pending" for Purposes of 28 U.S.C. § 1500**

As explained above, 28 U.S.C. § 1500 does not preclude this court from hearing a case merely because the claim asserted in this court arises from the "same operative facts" as the claim asserted in district court. Section 1500 also requires that the suit be "pending" when this court's jurisdiction is invoked. Plaintiffs argue that "there was no suit or proceeding 'pending' that would implicate § 1500" for the following three reasons. First, plaintiffs argue that § 1500 only applies to their amended complaint, which was filed after the litigation in the district court had been resolved. Pls.' Resp. at 4. Second, plaintiffs argue that some of the claims made in the amended complaint (such as their extraordinary delay claim) accrued only after the Ninth Circuit reversed the district court. *Id.* at 11 n.5, 12, 16, 20–21, 34. Such claims, plaintiffs maintain, were not pending in district court for § 1500 purposes because they could not have been asserted prior to the Ninth Circuit's reversal. *Id.* at 11 n.5. Thus, any minimal overlap in these facts is irrelevant because the overlap did not exist until after there was no longer another 'pending' action." Pls.' Resp. at 11 n.5; *id.* at 35. Third, plaintiffs argue that "any conceivable impediment to this Court's jurisdiction has long since been cured. . . . Had Plaintiffs simply voluntarily dismissed and refiled after the Ninth Circuit issued its mandate in *Resource I*, there would not even be a colorable ground for Defendant's motion." Pls.' Resp. at 35.

Plaintiffs first argue that the operative time for determining when their district court suit was pending was when their amended complaint was filed. This position is misguided because

the court's jurisdiction over a case depends on the factual circumstances alleged at the time its jurisdiction was invoked. *Keene*, 508 U.S. at 207 (holding that the jurisdiction of the Court of Federal Claims depends "upon the state of things at the time of the action brought") (quoting *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539 (1824)); *Low v. United States*, 90 Fed. Cl. 447, 451 (2009) (holding that the filing date of an amended complaint is "irrelevant" for purposes of § 1500 because only the filing date of the original complaint is relevant). Additionally, RCFC Rule 15(c)(2) provides that "[a]n amendment of a pleading relates back to the date of the original pleading when the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." *See Hall v. United States*, 74 Fed. Cl. 391, 394 (2006). Clearly, the takings claims in both the original and amended complaint are based on the same transaction or occurrence because in both the case before this court and counts III and IV of plaintiffs' district court case, the transaction or occurrence at issue is the Corps' denial of the section 404 permit and the facts underlying that decision. Accordingly, under RCFC Rule 15(c)(2), plaintiffs' amended complaint relates back to the filing date of their original complaint.

A better argument would have been for the plaintiffs to characterize their amended complaint as a supplemental complaint under RCFC Rule 15(d), which provides that the court "may permit supplementation even though the original pleading is defective in stating a claim or defense" if the supplemental pleading "set[s] out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." *See Walton v. United States*, 80 Fed. Cl. 251, 265 (2008) (stating that, "[b]ecause the Amended Complaint included allegations regarding events that happened after the first complaint, technically it is a supplemental complaint, not an 'amended complaint.'"). However, a supplemental complaint can only cure a jurisdictional defect if a plaintiff fails to meet some statutory prerequisite to filing, such as a statute's exhaustion requirements. *Cent. Pines Land Co.*, 697 F.3d 1360, 1365-66 (Fed. Cir. 2012). Such lenience is not available "if a statute contains an express prohibition against filing suit." *Id*. In *Central Pines*, the Federal Circuit held that § 1500 serves as an "express prohibition" for purposes of RCFC Rule 15(d) rather than a statutory prerequisite to filing that can be cured by supplemental pleading because the statute "explicitly states that the Claims Court 'shall not have jurisdiction' over 'any claim' that a party has pending in another court. This language creates a mandatory prohibited period—the duration of the district court action for the same claim—during which the Claims Court cannot have jurisdiction over any action initiated by plaintiff for the claim." *Id*. at 1366 (citing *Keene*, 508 U.S. at 209). Accordingly, not even RCFC Rule 15(d) allows plaintiffs to escape the strictures of § 1500.

Second, plaintiffs argue that the pending requirement could not possibly be met in the case of the extraordinary delay claim, which was made for the first time in their amended CFC complaint, because that claim could not have existed until after the Ninth Circuit had issued its opinion. Pls.' Resp. at 11 n.5, 12, 16, 20–21, 34. This argument is unavailing because in the post-*Tohono O'Odham* legal universe, the relevant comparisons under § 1500 are not the claims themselves but rather the operative facts that give rise to those claims. *Tohono O'Odham*, 131 S. Ct. at 1731; *see Keene*, 508 U.S. at 210–11 ("After noting that the causes of action 'arose out of' the same factual setting, we applied [the statute] and dismissed the appeal." (citations omitted)); *id*. at 212 ("[T]he word 'claim,' as used in [the statute] has no reference to the legal theory upon which a claimant seeks to enforce his demand."). The Ninth Circuit's reversal in favor of plaintiffs changed the *legal consequences* of the Corps' assertion of jurisdiction, requiring plaintiffs to amend their complaint so as to plead a temporary takings claim rather than a permanent takings claim, and to introduce an extraordinary delay claim. However, the reversal

does not alter the *identity of the operative facts* at issue—namely, the facts underlying the denial of the permit by the Corps.

Lastly, plaintiffs argue that any jurisdictional defect that might have existed at the time of filing has since been cured. Pls.' Resp. at 36 (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 75 F.3d 648, 653 (Fed. Cir. 1996) ("*RF&P*")). Plaintiffs argue that the court should not dismiss their case for lack of jurisdiction at this late stage because they could have, hypothetically, obtained a voluntary dismissal of their original suit before this court and then refiled it at a time when their district court litigation was no longer pending. Pls.' Resp. at 35. The case most supportive of their assertion is *RF&P*. That case, however, is inapposite. Its holding that an amended complaint alleging new theories of recovery can cure a § 1500 defect is no longer relevant after *Tohono O'Odham* because the entire jurisdictional inquiry is now limited to the operative facts asserted, regardless of the form of relief requested. Here, plaintiffs have amended their complaint to take into account the Ninth Circuit's legal conclusions. As discussed above, such an amendment does not change the operative facts of plaintiffs' claims in this court.

**E. The Court May Not Strictly Construe § 1500 or Make a Saving Exception**

Finally, plaintiffs make two additional arguments that the court must address. First, plaintiffs describe § 1500 as a "relic of the Reconstruction area" and argue that it should be strictly construed. Pl.'s Opp'n at 3, 5. However, the Supreme Court has expressly rejected this argument. In *Tohono O'Odham*, the Court commands that the statute be given a *broad reading* to prevent it from "be[ing] rendered useless by a narrow concept of identity." 131 S. Ct. at 1728 (quoting *Keene*, 508 U.S. at 213) (emphasis added). Moreover, the role of the court is not to construe a statute narrowly or broadly depending on the circumstances or the judge's policy preferences, but to construe it according to its ordinary meaning. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 476 (1994).

Second, plaintiffs observe that their right to obtain just compensation for government takings is protected by the Fifth Amendment of the Constitution, and that the doctrine of constitutional avoidance requires the court to interpret § 1500 to avoid depriving them of their constitutional rights. However, the doctrine of constitutional avoidance applies "only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction," and one of those constructions avoids constitutional issues. *Clark v. Martinez*, 543 U.S. 371, 385 (2005). In this case, even if the § 1500 were susceptible to another interpretation that favors the plaintiffs, this court is not at liberty to apply it because the precedent of the Supreme Court and Federal Circuit require this court to apply § 1500 when both suits arise from substantially the same operative facts, as is the case here.

Moreover, there are no serious doubts that Congress, having elected to establish the Court of Federal Claims, may limit its jurisdiction without running afoul of the Constitution. *John R. Sands & Gravel Co. v. United States*, 457 F.3d 1345, 1346-47 (Fed. Cir. 2006) (holding that the Court of Federal Claims lacked jurisdiction of a Takings Clause claim past the six-year limitations period); s*ee also Block v. North Dakota*, 461 U.S. 273, 292 (1983). Indeed, this court has rejected the contention that § 1500 "cannot be interpreted to restrict the jurisdiction of this court to decide a claim founded on the Constitution, namely a Fifth Amendment inverse condemnation claim." *Donnelly v. United States*, 28 Fed. Cl. 62, 64-65 (1993) (finding no serious constitutional doubt about the applicability of § 1500 to a Takings Clause case).

* * *

Before concluding, it is worth recognizing that this case, like *Central Pines*,[10] "presents exactly the type of incomplete relief and hardship the Supreme Court noted could result from application of section 1500." *Cent. Pines*, 99 Fed. Cl. at 407.[11] Mindful of this hardship, the court must nevertheless stay faithful to its jurisdictional grant, for "there is no basis for finding saving exceptions [to jurisdictional statutes] unless they are made explicit." *De La Rama S.S. Co. v. United States*, 344 U.S. 386, 390 (1953). "If indeed the statute leads to incomplete relief," as it has here, plaintiffs "are free to direct their complaints to Congress." *Tohono O'Odham*, 131 S. Ct. at 1731.[12]

In both *Keene* and *Tohono O'Odham*, the Supreme Court rejected policy arguments based on a litigant's interpretation of § 1500's purpose. In *Keene*, the Court held that:

> We have said nothing until now about Keene's several policy arguments, and now can only answer that Keene addresses the wrong forum. It may well be, as Keene argues, that § 1500 operates in some circumstances to deprive plaintiffs of an opportunity to assert rights that Congress has generally made available to them "under the complex legal and jurisdictional schemes that govern claims against the Government." The trial judge in this case was not the first to call this statute anachronistic, and there is a good argument that, even when first enacted, the statute did not actually perform the preclusion function emphasized by its sponsor. But the "proper theater" for such arguments, as we told another disappointed claimant many years ago, "is the halls of Congress, for that branch of the government has limited the jurisdiction of the Court of Claims." We enjoy no "liberty to add an exception to remove apparent hardship," and therefore enforce the statute.

---

[10] The hardship suffered by the plaintiffs in *Central Pines* was significantly worse than that inflicted upon plaintiffs in the instant case. The court was already "considering the plaintiffs' claim for attorneys' fees and costs [when] the Supreme Court issued its opinion in *Tohono* and the government moved to dismiss." *Central Pines*, 99 Fed. Cl. at 397. The motion to dismiss was filed after plaintiff won a judgment for $1,667,042.86 plus interest under the Takings Clause. *See id.* at 397 (citing *Central Pines*, 95 Fed. Cl. 633, 635 n.1, 652 (plaintiffs awarded a $1.6 million judgment)).

[11] In *Tohono O'Odham*, the Court recognized that its interpretation of § 1500 might force "plaintiffs to choose between partial remedies available [only] in different courts." 131 S. Ct. at 1730.

[12] On December 6, 2012, the Administrative Conference of the United States formally recommended replacing § 1500 with a measure that merely stays proceedings in the Court of Federal Claims until a pending dispute in other federal courts are resolved. *See* Administrative Conference Recommendation 2012-6, *Reform of 28 U.S.C. Section 1500*, http://www.acus.gov/recommendation/reform-28-usc-section-1500. The ABA followed suit with a similar recommendation on February 11, 2013. *See* ABA Resolution 300, http://www.americanbar.org/content/dam/aba/administrative/house_of_delegates/2013_hod_midyear_meeting_daily_journal.authcheckdam.pdf. However, Congress has not yet taken any action on any of these recommendations.

*Keene*, 508 U.S. at 217 (citations and quotations omitted).  For that reason, this case, like *Central Pines*, may be appropriate for a congressional reference, "wherein a bill is referred to the chief judge of the Court of Federal Claims by either house of Congress for review by a three judge panel."  *Central Pines*, 99 Fed. Cl. at 407; *see* 28 U.S.C. §§ 1492, 2509(a).

The Court of Federal Claims, like any other federal court, may adjudicate claims against the United States *only* with the United States' consent.  *Transamerica Ins. Co. v. United States*, 31 Fed. Cl. 602, 604 (1994) ("Absent congressional consent to adjudicate a claim against the United States, [the CFC] lacks authority to grant relief.").  When Congress has withdrawn jurisdiction, as it has done here under 28 U.S.C. § 1500, it has also withdrawn the United States' consent to suit.  *See Winnebago Tribe of Nebraska v. United States*, 06-913L, 2011 WL 5042385, at * 1 (Fed. Cl. Oct. 25, 2011).  The judiciary is said to be the "least dangerous" of the three branches because even in the face of manifest injustice, its duty is to abide by the law—regardless of the harsh effects such obedience might occasion on litigants—and defer the litigants to the political branches for redress.  *The Federalist No. 78* (Alexander Hamilton), *available at* http://www.constitution.org/fed/federa78.htm.  "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868).

### III. CONCLUSION

For the foregoing reasons, defendant's **MOTION** to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) and 28 U.S.C. § 1500 is **GRANTED**.  The Clerk is directed to take the necessary steps to dismiss this matter.

**IT IS SO ORDERED.**

s/ *Lawrence J. Block*

Lawrence J. Block
Judge